UNITED SATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID ANTHONY LEE                                     CIVIL ACTION

VERSUS                                                NUMBER: 14-2605

BENEDICT J. WILLARD,                                  SECTION: "E"(5)
JUDGE; ET AL.

**REPORT AND RECOMMENDATION**

This 42 U.S.C. §1983 proceeding was filed *in forma pauperis* ("IFP") by *pro se* Plaintiff, David Anthony Lee, against Defendants, Judge Benedict Willard of the Criminal District Court for the Parish of Orleans; Francis deBlanc, former Assistant District Attorney for the Parish of Orleans; Brian Hart of the Orleans Parish Indigent Defender Program; Stacie Davis, Court Reporter for the Criminal District Court for the Parish of Orleans; and, Arthur Morrell, Clerk of the Criminal District Court for the Parish of Orleans.  (Rec. doc. 1, pp. 1, 5).

Plaintiff Lee is an inmate of the Louisiana State Penitentiary in Angola, Louisiana, who is serving sentences of life imprisonment following his August 12, 1999 conviction for aggravated burglary, aggravated crime against nature, aggravated arson, simple burglary of an inhabited dwelling, aggravated rape, and extortion in the Criminal District Court for the Parish of Orleans.  Before turning to the allegations presented by Lee's complaint,[1] the

---

[1]  Plaintiff's complaint was prominently prepared by another inmate at Angola, Shawn LaCour (rec. doc. 1, pp. 36, 57), who was similarly convicted of a string of offenses, including aggravated rape, armed robbery, aggravated burglary, and sexual battery, a conviction that he previously but unsuccessfully challenged in a *habeas* proceeding here, *LaCour v. Cain*, No. 05-CV-2547 "B"(5).  LaCour subsequently filed a second *habeas* proceeding, *LaCour v. Cain*, No. 13-CV-0035 "B"(5), that was construed as a motion for authorization to file a successive petition under 28 U.S.C. §2244(b)(3)(A) and was transferred to the Fifth Circuit, which denied the motion on June 11, 2013.  *In re: LaCour*, No. 13-30215 (5th Cir. June 11, 2013)(unpublished order).

Court will recall the state court proceedings pertaining to his conviction to better place those allegations in a proper context for resolution.

Following his conviction, sentencing, and adjudication as a third felony offender under LSA-R.S. 15:529.1, Lee was granted an out-of-time appeal which he pursued through court-appointed counsel. On December 4, 2002, the Louisiana Fourth Circuit Court of Appeal reversed Lee's conviction and sentences because the record failed to reveal that the trial judge had made a determination of his competency to proceed to trial after he had requested a lunacy hearing. *State v. Lee*, 834 So.2d 536 (La. App. 4th Cir. 2002). From that ruling, the State sought writs from the Louisiana Supreme Court which, on June 27, 2003, reversed the decision of the Louisiana Fourth Circuit and remanded the case to the trial court for the ". . . purposes of conducting an evidentiary hearing and reconstructing the proceedings as they related to the question of defendant's competency to stand trial."[2/] *State v. Lee*, 852 So.2d 987 (La. 2003). Additional instructions were provided to the trial court, as follows:

> [t]he court shall determine whether the trial judge granted the defendant's motion for appointment of a sanity commission, before the defendant attempted to withdraw the motion, thereby finding reasonable grounds to doubt the defendant's competency to proceed and staying all further proceedings by operation of La.C.Cr.P. art. 642 until that determination was made. In the event that the trial judge did grant the motion before defendant attempted to withdraw it, the court shall further determine whether the trial judge then appointed (or failed to appoint) the commission doctors or conducted (or failed to conduct) a hearing on the commission's reports and determined (or failed to determine) the defendant's competency to proceed before he went to trial. On the basis of its factual findings, the court is then to rule on the question of whether the defendant is entitled to set aside his convictions

---

[2/] In doing so, the Supreme Court cited ". . . the poor state of the record," a recurring theme throughout Plaintiff's complaint herein. *Lee*, 853 So.2d at 987.

and sentences under this Court's decisions in *State v. Seals*, 00-
2738 (La. 10/25/02), 831 So.2d 828, and *State v. Nomey*, 613
So.2d 175 (La. 1993).  Either side may appeal from an adverse
ruling by the trial court.

*Lee*, 852 So.2d 987.

Following further proceedings, the trial court ultimately declined to set aside Lee's

conviction and sentences, a ruling that he appealed to the Louisiana Fourth Circuit.  In the

published opinion that it subsequently issued, the Louisiana Fourth Circuit first

summarized the trial court evidence of record bearing on the issue before it, as follows:

> [t]he record contains a minute entry dated April 7, 1999 that
> reflects that a hearing to determine Mr. Lee's competency to
> stand trial was set for April 20, 1999.  A minute entry dated
> April 20, 1999, reflects that the hearing was rescheduled for
> April 27, 1999.  A transcript of the proceedings on April 27,
> 1999, reflects the following colloquy:
>
> MR. JUPITER:
>
> Your Honor, the first gentleman is David Lee.  He's
> scheduled for a lunacy hearing.
>
> THE COURT:
>
> Okay.  I'm going to call the doctors.  This matter is set
> for trial tomorrow?
>
> MR. JUPITER:
>
> Yes, Your Honor.  It's set for trial tomorrow, Your
> Honor.  (Inaudible).  I'm requesting a continuance.
>
> The only other information in the record regarding the
> competency hearing is an entry on the trial court's docket
> master that reads:
>
> 4/27/1999
>
> DEFENDANT LEE APPEARED IN COURT FOR LUNACY
> HEARING ATTENDED BY OMODARE JUPITER.
> DEFENDANT WITHDREW REQUEST FOR LUNACY

EXAMINATION.  DEFENSE REQUESTED CONTINUANCE ON TRIAL.  COURT DENIED.  TRIAL CURRENTLY SET 4/28/99.

There is nothing in the April 27, 1999 transcript that is in the record, however, that refers to a withdrawal of the request for a competency hearing.  Additionally, there is nothing in the record to indicate whether or not the trial court ever determined Mr. Lee's competency to stand trial.

*State v. Lee*, 930 So.2d 174, 176 (La. App. 4th Cir. 2006).

The Louisiana Fourth Circuit then commented on the proceedings that had been conducted by the trial court while the case was on remand there:

[t]he trial court reviewed the record and contacted the attorney who represented Mr. Lee at his trial in an attempt to determine what had transpired with respect to Mr. Lee's original request for a competency hearing.

* * * * * * *

On remand to the trial court, Judge Benedict Willard considered the matter and concluded that there was "no evidence to suggest that the trial Judge made a ruling on the motion [for a competency hearing] prior to the defendant's withdrawal [of the motion]."  Judge Willard also stated in his reasons for judgment that he had sought the assistance of Mr. Lee's trial attorney who indicated that "to his recollection no ruling was ever made."  Judge Willard held that "for the foregoing reasons and on the basis of factual findings, the district court does not find where the defendant is entitled to set aside his convictions and sentences."

In response to the Supreme Court's instructions that the trial court "determine whether the trial judge granted the defendant's motion for appointment of a sanity commission, before the defendant attempted to withdraw the motion," Judge Willard concluded that there was no evidence that Judge Hunter had ruled on the motion before Mr. Lee attempted to withdraw it.  Because the Supreme Court required further inquiry by the trial court judge, only if the trial court were to find that the motion had been granted prior to the attempted

4

> withdrawal, Judge Willard did not address the other issues
> raised by the Supreme Court.
>
> *Lee*, 930 So.2d at 176-77
> (footnote omitted).

Unlike Judge Willard, however, the Louisiana Fourth Circuit was unable to conclude that the original trial judge had not ruled upon Lee's motion for the appointment of a sanity commission prior to that motion being withdrawn. *Lee*, 930 So.2d at 177-78. Accordingly, the panel proceeded to consider Lee's appeal under the Louisiana Supreme Court's decisions in *Seals* and *Nomey* as that court had directed in its earlier opinion reinstating Lee's conviction and remanding the matter. *Id.* After examining the holdings in *Seals* and *Nomey*, the Louisiana Fourth Circuit noted that while ". . . a defendant does not have an absolute right to the appointment of a sanity commission simply upon request . . . the failure to resolve the issue of a defendant's capacity to proceed to trial may result in either nullification of the conviction and sentence or a *nunc pro tunc* hearing to determine competency retrospectively." *Id.* (internal quotation omitted). Pursuant to *Seal*, the factors to be considered in conducting a proper *nunc pro tunc* inquiry into a defendant's competency to stand trial were the seven factors enunciated in *State v. Bennett*, 347 So.2d 1129, 1137 (La. 1977). *Id.*

Normally, the judge before whom a defendant's case was tried would be in a better position to make a reasoned *nunc pro tunc* determination regarding a defendant's competency to proceed. However, because the judge who had presided over Lee's trial was no longer on the bench and her predecessor had no more first-hand knowledge of the trial than it did, the Louisiana Fourth Circuit panel, relying on Lee's testimony at trial, elected to make the *nunc pro tunc* determination of Lee's competency on its own. *Lee*, 930 So.2d at

177-79.  After carefully weighing Lee's trial testimony against the seven *Bennett* factors and

the standards set forth by the Louisiana Supreme Court in *Seals*, the Louisiana Fourth

Circuit found that Lee ". . . was clearly competent to stand trial."  *Id.* at 182.  Accordingly, the

trial judge's decision to leave Lee's conviction and sentences intact was affirmed.  *Id.*

From the unfavorable ruling of the Louisiana Fourth Circuit, Lee sought writs from

the Louisiana Supreme Court which, on January 12, 2007, ruled as follows:

> PER CURIAM.
>
> Writ denied.  The record, as supplemented with the transcript of the October 22, 2004 evidentiary hearing, which followed remand of the case for that purpose by this Court in *State v. Lee*, 03-0032 (La. 6/27/03), 852 So.2d 987, is sufficient to show that the defense did not raise a bona fide concern regarding the defendant's competency to proceed, and that the trial judge never found that reasonable grounds existed for doubting defendant's competency sufficient to require that [the] prosecution be halted until the issue was resolved in accord with La.C.Cr.P. arts. 641 *et seq.*  Therefore, the court of appeal need not have conducted a *nunc pro tunc* determination of the defendant's competency.

> *State v. Lee*, 946 So.2d
> 174 (La. 2007).

Lee's subsequent petition for writ of certiorari to the United States Supreme Court

met a similar fate.  *Lee v. Louisiana*, 552 U.S. 870, 128 S.Ct. 170 (2007).

Changing tack, Plaintiff now essentially seeks to undermine the validity of his

conviction by initiating this lawsuit under 42 U.S.C. §1983.  Unfortunately, the Court's task

in resolving the matter at hand is made more difficult by the style employed throughout

Plaintiff's pleading and the voluminous materials that accompany it.  Contrary to the

dictates of Rule 8(a)(2) of the Federal Rules of Civil Procedure, Plaintiff's principal pleading

contains no "short and plain statement of the claim showing that the pleader is entitled to

relief" but is instead a lengthy, rambling document that is rife with inaccuracies and

conclusory allegations.  Belied by his proven ability to file this lawsuit, Plaintiff's statement

of claim herein begins with the erroneous assertion that he ". . . has been ongoingly denied

access to the courts during the time since his first reversal on direct appeal <u>12-4-2002</u> up

until this very day to refute the Prosecutor Francis Deblanc rebuttal."  (Rec. doc. 1, p. 9).[3]/

So aggrieved was Plaintiff by the Louisiana Supreme Court's ultimate decision on direct

appeal that he apparently believes that it was obtained on the basis of a nefarious rebuttal

brief filed by the prosecutor that he was never provided or haled into court to challenge.

*Id.*  Plaintiff then alleges that "[t]he Louisiana Supreme [Court] desided . . . [his] convictions

and sentences was invalid and denied the states court decision."   *Id.*   As the procedural

history cited above makes clear, however, the Louisiana Supreme Court has never declared

Plaintiff's conviction to be invalid.  To the contrary, that court reinstated Lee's conviction

and sentences after they had been reversed by the Louisiana Fourth Circuit and later found

that the record was sufficient to show that Lee did not raise a bona fide doubt about his

competency to proceed such that the prosecution be halted until that issue was resolved.

*Lee*, 852 So.2d 987; *Lee*, 946 So.2d 174.

      Following these conclusory and erroneous assertions, Plaintiff, seizing upon the

Louisiana Supreme Court's reference to ". . . the poor state of the record" (*see* note 2, *supra*)

and under the rubric of a claim of denial-of-access to the courts, complains of a far-reaching

---

[3]/ The Court is compelled to note Plaintiff's untruthful, negative answer to Question No. I(A) of the pre-printed §1983 complaint form, wherein he was asked whether he had previously filed any other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to his imprisonment.  (Rec. doc. 1, p. 1).  The Court's independent research readily reveals that Lee has, over the years, filed numerous writ applications in the Louisiana Supreme Court and the Louisiana Fourth Circuit Court of Appeal challenging his criminal conviction.  *State ex rel. Lee v. State*, 146 So.3d 205 (La. 2014); *State v. ex rel. Lee v. State*, 138 So.3d 637 (La. 2014); *State ex rel. Lee v. State*, 100 So.3d 833 (La. 2012); *State ex rel. Lee v. State*, 82 So.3d 278 (La. 2012); *State ex rel. Lee v. State*, 77 So.3d 958 (La. 2012); *State ex. Rel. Lee v. State*, 56 So.3d 970 (La. 2011).  That Plaintiff was able to litigate all of these matters over an extended period of time not only refutes his allegations of a complete and wholesale denial of access to the courts by the named Defendants but casts significant doubt on his credibility and, consequently, the veracity of his remaining allegations.

conspiracy among the named Defendants.  That conspiracy was purportedly manifested through missing, incomplete, and/or fabricated records of the state court proceedings related to his direct criminal appeal and his belief that the Louisiana Supreme Court's mandate on remand was not carried out as it related to the question of his competency to proceed.  Contrary to the Louisiana Supreme Court's directive of June 27, 2003, Plaintiff alleges that the trial court failed to scour and/or supplement the record with unidentified "testimonies" that were presumably favorable to him on the competency issue, that the testimony that was taken had nothing to do with the sanity proceedings, and that the transcript from October 22, 2004 was withheld from him and his appellate counsel. Plaintiff further alleges that the conduct of and ruling issued by Judge Benedict was inconsistent with the Louisiana Supreme Court's order on remand; that prosecutor deBlanc testified falsely regarding the competency issue; that attorney Hart allowed defense witnesses to testify at the October 22, 2004 hearing even though the burden of proof was on the State with respect to the competency issue;  that Court Reporter Davis transcribed the transcript of that hearing ". . . incomplete knowing this case was under order to show 'testimonies' from [the] poor state of the trial court record;" and, that he has filed a number of letters, motions, and applications for post-conviction relief with respect to the foregoing transgressions which have gone unanswered, ". . . hindering plaintiff from seeking review from a higher court . . ." on some unidentified "legal claim."  (Rec. doc. 1, pp. 19-36).  As respects the purported conspiracy, Plaintiff alleges as follows:

> [i]t is plaintiff['s] position that the [trial] court judge Benedict Willard, State prosecutor Frances Deblanc and plaintiff['s] attorney Brian P. Hart, along with Court-Reporter Stacie Davis and Clerk Arthur Morrell conspired to obstruct the due course of justice in State court by conspiring to deny plaintiff the equal protection of law; and thereafter the actual injury denied him

> access to the courts ongoingly up until this very day; hindering plaintiff from presenting a legal claim.
>
> \* \* \* \* \* \*
>
> Plaintiff is being illegally confined in the Department of Public Safety and Correction[s] of (LSP) Angola Louisiana due to the factual injury caused by Judge Benedict Willard, District Attorney Francis DeBlanc, Plaintiff State Counsel Brian Hart, Court Reporter Stacie Davis, and Arthur Morrell Clerk of Court conspiring to go against the Louisiana Supreme Court order and against plaintiff['s] rights of his pleadings, denying him access to the courts where he won't be able to present a legal claim, simply because plaintiff['s] case was reversed and remanded on the same issue of poor state of [the] record; and that a legal answer would afford him immediate relief.

(Rec. doc. 1, pp. 20, 33).

In his prayer for relief, Plaintiff seeks a declaratory judgment that the alleged conspiratorial acts of the Defendants violated his constitutional rights, along with a substantial amount of compensatory and punitive damages. (Rec. doc. 1, pp. 37-57).

Liberally construing Plaintiff's complaint, he alleges that he was denied the tools that were necessary for an effective direct criminal appeal because the records from the trial court were missing, incomplete, and/or fabricated. *See, e.g., Carmona v. Butler*, No. 88-CV-1360, 1988 WL 86782 at *2 (E.D. July 27, 1988)(citing *Mullen v. Blackburn*, 808 F.2d 1143, 1146 (5th Cir. 1987) and *Schwander v. Blackburn*, 750 F.2d 494, 497-98 (5th Cir. 1985)). Viewed in that light, Plaintiff's allegations challenge the fact and duration of his confinement which would ordinarily need to be addressed on *habeas corpus* grounds in the first instance. *Id.*; *see also Borning v. Cain*, 754 F.2d 1151, 1152 (5th Cir. 1985). However, it would be inappropriate to do so in the present case. Congress has prescribed forms for use in seeking federal *habeas corpus* relief under 28 U.S.C. §2254. Rule 2(d), Rules Governing Section 2254 Cases in the United States District Courts; Appendix of Forms, Rules

Governing Section 2254 Cases in the United States District Courts.  The use of such forms is required.  *See Propes v. Quarterman*, 573 F.3d 225, 231 (5th Cir. 2009), *cert. denied*, 560 U.S. 907, 130 S.Ct. 3272 (2010)(citing Advisory Committee Notes to Rule 2, Subdiv. "c", of the Rules Governing Section 2254 Cases in the United States District Courts); *Thurston v. Louisiana*, No. 09-CV-0013, 2009 WL 1307765 at *1 n. 1 (E.D. La. May 11, 2009).  Moreover, Lee has not named as the defendant/respondent herein his present custodian as the law requires.  28 U.S.C. §2242; Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts; *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95, 93 S.Ct. 1123, 1129-30 (1979).  Accordingly, insofar as the instant matter can be construed as a request for federal habeas corpus relief, it should be dismissed without prejudice to Lee's right to re-file same on the Congressionally-prescribed form.

Construing Plaintiff's allegations on civil rights grounds, his §1983 claims falter for a variety of reasons.  As for Judge Willard, any §1983 claim against him in his individual capacity fails due to the absolute judicial immunity that he enjoys.  *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099 (1978); *Graves v. Hampton*, 1 F.3d 315, 317-18 (5th Cir. 1993).  Furthermore, any such claim brought against the Judge in his official capacity fails for two reasons.  First, the Judge is a state official and state officials acting in that capacity are not considered to be "persons" within the meaning of §1983.  *Washington v. Louisiana*, No. 09-CV-3186, 2009 WL 2015556 at *5 (E.D. La. June 30, 2009).  Second, because an official-capacity claim against the Judge is, in reality, a claim against the state itself, any such claim is barred by the Eleventh Amendment.  *Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188 (5th Cir. 1986); *Doris v. Van Davis*, No. 08-CV-4138, 2009 WL 382653 at *2 (E.D. La. Feb. 12, 2009).  With respect to former Assistant Attorney deBlanc, he is entitled to absolute

prosecutorial immunity for the acts complained of *sub judice*.  *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984 (1976); *Graves*, 1 F.3d at 317-18.

Turning to court-appointed counsel Hart, as a general rule neither appointed nor retained counsel are considered to be acting under color of state law for purposes of §1983 liability.  *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445 (1981); *Russell v. Millsap*, 781 F.2d 381, 383 (5th Cir. 1985).  In *Tower v. Glover*, 467 U.S. 914, 919-20, 104 S.Ct. 2820, 2824 (1984), the Supreme Court held that the "under color of state law" requirement of §1983 is satisfied where counsel conspires with other traditional state actors.  In the Fifth Circuit, however, "'[p]laintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.  Bald allegations that a conspiracy existed are insufficient.'"  *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991)(quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987)).  "'Mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C.A. §1983."  *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986)(quoting *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)).  Here, although Plaintiff generally alleges that the named Defendants conspired to deprive him of his constitutional rights, nowhere does he show that the Defendants agreed to commit an illegal act.  *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990).  Without such a showing, Defendant Hart cannot be said to have acted under color of state law for purposes of §1983 liability.

As for Court Reporter Davis, Plaintiff complains that she transcribed the October 22, 2004 evidentiary hearing "incomplete" in that she failed to include unidentified

"testimonies" that were purportedly ordered by the Louisiana Supreme Court in its June 27, 2003 per curiam opinion remanding Lee's case to the trial court. (Rec. doc. 1, p. 17).

Because 42 U.S.C. §1983 contains no statute of limitations, federal courts look to the most analogous state statute of limitations had the action been brought in state court. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938 (1985). In Louisiana, delictual actions are subject to a prescriptive period of one year. LSA-C.C. Art. 3492; *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989). The prescriptive period begins to run from the moment the plaintiff knows or has reason to know of the injury that forms the basis of his complaint. *Helton v. Clements*, 832 F.2d 332, 334-35 (5th Cir. 1987).

Among the voluminous materials that were submitted by Plaintiff along with his complaint was an application for post-conviction relief that was completed by him on June 25, 2008. (Rec. doc. 1-1, pp. 42-83). Included as a ground for relief in that application was Lee's claim that he was denied the right to meaningful review of his conviction because ". . . the October 22, 2004 evidentiary hearing record, which was a 'make-up' record from the original trial court record . . . still is an incomplete record . . ." and that his court-appointed counsel on remand ". . . did not object to this incomplete record of [the] October 22, 2004 evidentiary hearing proceeding . . ." (*Id.* at pp. 73-74).

As the foregoing application readily reveals, Lee was obviously aware of the alleged record deficiencies of which he complains no later than June 25, 2008. At that point, the one-year prescriptive period for bringing a §1983 action began to run and had long since expired when Plaintiff signed his complaint on November 11, 2014. Indeed, this prescriptive bar is arguably available to all of the named Defendants as Plaintiff, despite his voluminous submission in this case, complains of no affirmative acts taken by the

12

Defendants within the year prior to the date that the complaint was signed.  Plaintiff's §1983 claims are prescribed and should thus be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  *Graves*, 1 F.3d at 319.

Finally, as for Clerk of Court Morrell, Plaintiff alleges that he, like Court Reporter Davis, had a hand in the creation of the alleged incomplete record pertaining to his criminal case.  As discussed above, this aspect of Plaintiff's §1983 claim against Morrell is clearly prescribed as Plaintiff was undoubtedly aware of the state of the record no later than June 25, 2008.  Plaintiff also alleges that a number of letters, motions, and post-conviction relief applications that he has filed with respect to the transgressions of which he complains herein have gone unanswered, thereby preventing Plaintiff from seeking relief from a higher state court on some unidentified "legal claim."

It is axiomatic that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-22, 97 S.Ct. 1491, 1494-95 (1977); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123, 114 S.Ct. 1081 (1994).  "Even though the exact boundaries remain unclear, 'the Supreme Court has not extended this right to apply further than the ability of an inmate to prepare and transmit a necessary legal document to a court.'"  *Eubanks v. Mullen,* 43 F.3d 669, 1994 WL 724986 at *4 (5th Cir. 1994)(quoting *Brewer*, 3 F.3d at 820)*.*  To prevail on a claim alleging denial of access to the courts, the claimant must show not only denial of access but also prejudice resulting from the denial."  *Id.* (citing *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974 (1992)).  The inmate must demonstrate a relevant, actual injury stemming from the defendant's allegedly unconstitutional conduct.  *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999)(citing *Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174,

2180-81 (1996)).   "This requires the inmate to allege that his ability to pursue a 'nonfrivolous,' 'arguable' legal claim was hindered." *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009)(quoting *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 2187 (2002)).   "The inmate must describe the underlying claim well enough to show that its 'arguable nature . . . is more than [mere] hope.'" *Id.* (quoting *Christopher*, 536 U.S. at 416, 122 S.Ct. at 2187).

The recurring refrain running throughout Plaintiff's lengthy complaint is that he has been "ongoingly denied access to the courts," and thus deprived of the opportunity to present some unidentified "legal claim" to reviewing tribunals, ever since his criminal case was litigated on direct appeal.   As shown above, that assertion is obviously untrue as Plaintiff has successfully filed numerous writ applications in the Louisiana Fourth Circuit and the Louisiana Supreme Court (*see* note 3, *supra*), a number of which have been denied as repetitive under LSA-C.Cr.P. Art. 930.4 or untimely under LSA-C.Cr.P. Art. 930.8, the rules governing applications for post-conviction relief in the Louisiana state courts.   *See Lee*, 138 So.3d 637 (repetitive); *Lee*, 100 So.3d 833 (time-barred); *Lee*, 82 So.3d 278 (repetitive)*.   Lee was also able to successfully initiate this lawsuit without apparent difficulty.   What Lee actually means by the use of his self-coined, access-denial catchphrase is that he has not received a ruling in his favor on a competency issue that has been presented to every level of the state court system all the way up to the U.S. Supreme Court. The cornerstone of adequate court access, however, is the ability to present a claim, not the right to obtain a ruling of one's liking.   Save his opportunity to pursue his allegations on *habeas corpus* grounds, on which the Court expresses no opinion here, Lee may not seek review of those state courts' decisions by casting a complaint in the form of a civil rights

14

action.  *See Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir.), *cert. denied*, 513 U.S. 906, 115 S.Ct. 271 (1994); *Hale v. Harney*, 786 F.2d 688, 690-91 (5th Cir. 1986).  And despite the length of his submission, Lee has not identified with any degree of specificity a non-frivolous, arguable legal claim that rises above the level of mere hope.  No violation of Plaintiff's constitutional right of access to the courts has been established here.  For this reason, and those set forth above, it will be recommended that Plaintiff's §1983 claims be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

## RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's complaint, to the extent that it can be construed as a request for *habeas corpus* relief, be dismissed without prejudice.

It is further recommended that Plaintiff's §1983 claims be dismissed with prejudice under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

15

New Orleans, Louisiana, this __26th__ day of _____February_____, 2015.

 

 

_____

MICHAEL B. NORTH

UNITED STATES MAGISTRATE JUDGE